# MODIFIED SETTLEMENT AGREEMENT

## I. GENERAL PROVISIONS.

A. This Agreement (the "Agreement") is entered into between Disability Rights North Carolina ("DRNC") and the North Carolina Department of Health and Human Services (the "Department) (hereinafter collectively "the Parties").

B. This Agreement resolves certain claims made by DRNC concerning alleged violations by the Department of the provisions of the Medicaid Act, including those for Early and Periodic Screening, Diagnostic and Treatment Services ("EPSDT"). 42 U.S.C. § 1396d(r). These claims were contained in a Demand Letter issued by DRNC dated October 14, 2014, and concerned Medicaid behavioral health services offered to children with complex mental health needs. This Agreement does not serve as an admission by the Department that the Department is not currently complying with the EPSDT provisions of the Medicaid Act.

C. This Agreement is intended to ensure the Department will continue to willingly meet the requirements of the EPSDT provisions of the Medicaid Act, which require that the Department offer to Medicaid eligible children "necessary health care, diagnostic services, treatment and other measures ... to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services." Through this Agreement, the Parties intend that the goals of the EPSDT will be achieved.

D. Since DRNC issued its Demand Letter in October 2014, the Parties have cooperatively worked to review the demands and to address the concerns raised in that letter, even though the Department disputes many of the findings and conclusions. The Parties agree that it is in their mutual interest to avoid litigation and to work constructively.

E. Nothing in this Agreement shall be construed as an acknowledgment, an admission, or evidence of liability of the Department under the Medicaid Act, the Constitution or any federal or State law, and this Agreement may not be used as evidence of liability in this or any other civil or criminal proceeding.

F. The signatures below of representatives of DRNC and the Department signify that these parties have given their final approval to this Agreement. Each Party to this Agreement represents and warrants that the person who has signed this Agreement on behalf of his or her entity is duly authorized to enter into this Agreement and to bind that Party to the terms and conditions of this Agreement.

G. This Agreement is binding upon the Parties, by and through their officials, agents, employees, and successors for the term of this Agreement. If the Department contracts with an outside provider for any of the services provided in this Agreement, the Agreement shall be binding on all contracted parties, including agents and assigns. The Department shall ensure that all contracted parties and agents take all actions necessary for the Department to comply with the provisions of this Agreement.

H. No person or entity is intended to be a third party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and, accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement in any civil, criminal, or administrative action. Neither third parties, nor the Court, shall have the ability to modify the terms set out in this Agreement without consent of the Parties, subject to the enforcement provisions set forth in Sections V(F) and (G), below.

I. This Agreement and any documents incorporated by reference constitute the entire integrated Agreement of the Parties. No prior contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding. Any amendment to this Agreement shall be in writing and signed by both Parties.

J. This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same Agreement, notwithstanding that each Party is not a signatory to the original or the same counterpart. All references to signature or execution of the Agreement shall be calculated from the date on which the last Party executed the Agreement.

K. The Department, while empowered to enter into and implement this Agreement, does not have the legal authority to bind the North Carolina General Assembly, which has the authority under the North Carolina Constitution and laws to appropriate funds for, and amend laws pertaining to, the State's system of services for people with intellectual disability and mental illness. The Department agrees to seek funding necessary to implement and complete the terms of this Agreement. In the event the Department fails to attain necessary appropriations to implement and complete the terms of this Agreement this year or in a future fiscal year, this Agreement shall become null and void and DRNC has the right to revive any claims otherwise barred by operation of this Agreement. Any question of whether the amount of the appropriations is adequate to implement and complete the terms of this Agreement is solely for determination by the Department, and the Department's determination may not be challenged by DRNC in any forum, unless DRNC can show it was not made in good faith.

L. During the pendency of this Agreement, DRNC is barred from bringing an action against the Department under the provisions of the Medicaid Act, including those for Early and Periodic Screening, Diagnostic and Treatment Services ("EPSDT"). 42 U.S.C. § 1396d(r), the ADA or the Rehab Act for any claim or allegation set forth in the Complaint to be filed simultaneously with this agreement.

M. The Parties represent and acknowledge that this Agreement is the result of extensive, thorough and good faith negotiations. The Parties further represent and acknowledge that the terms of this Agreement have been voluntarily accepted, after consultation with counsel, for the purpose of making a full and final compromise and settlement of any and all claims or allegations set forth in the Demand Letter.

N. DRNC and the Department will bear the cost of their own fees and expenses incurred in connection with this Agreement, including attorney's fees.

O. This Agreement shall be interpreted in accordance with federal law and the laws of the State of North Carolina. The venue for all legal actions concerning this Agreement shall be in the United States District Court for the Eastern District of North Carolina, Western Division (the "Court").

## II. DEFINITIONS.

A. "Case Management Services" are defined consistent with the targeted case management services set out in DMA Clinical Coverage Policy 8 L.

B. "Children with Complex Needs" are defined as Medicaid eligible children ages 5 and under age 21 with a developmental disability (including Intellectual Disability and/or Autism Spectrum Disorder) and a mental health disorder, who are at risk of not being able to enter or remain in a community setting. The term "at risk" is defined for this purpose as acts or behaviors that present a substantial risk of harm to the child or to others.

C. "LME/MCO" is defined consistent with section 122C-3(20c) of the North Carolina General Statutes. The Current LME/MCOs include Smoky Mountain Center (Vaya Health), Partners Behavioral Health Management, Cardinal Innovations Healthcare Solutions, Sandhills Center, Alliance Behavioral Healthcare, Eastpointe and Trillium Health Resources.

## III. SUBSTANTIVE PROVISIONS

A. The Department of Health and Human Services (the Department) agrees to develop and implement a standard and a process that is uniform across the State to identify Children with Complex Needs in order to link them to adequate diagnostic testing and to appropriate services.

B. The Department agrees to develop and implement a process that is consistent across the state to conduct a comprehensive clinical assessment of identified Children with Complex Needs. Such assessments shall be conducted by appropriately licensed or credentialed professionals and clinicians who have experience in the diagnosis and treatment of individuals with the dual diagnoses of intellectual disability and mental illness, and who are not direct employees of an LME/MCO. The assessment shall contain, at a minimum, the elements set out in DMA Clinical Coverage Policy 8C.

C. For each child identified pursuant to Paragraph III.A of this Agreement, the Department agrees to take the following actions:

1. Coordinate the delivery of appropriate services. This coordination of services will include:

3

a. Regular communications, including meetings if needed, between providers, including case managers and other service providers, legal guardians, family members and with the individual previously designated as the LME/MCO point of contact for children with complex needs, the LME/MCO care coordinator, and if requested the State Coordinator (Administrator). The frequency of the communications will be determined by the needs of the child.

   b. These communications will be documented as required by clinical policy and practice.

 2. Authorize Case Management Services to assist the parent or guardian of the child with the identification and coordination of appropriate services. The Case Manager will not be a direct employee of the LME/MCOs and will be responsible for making certain that all of the elements of a comprehensive assessment are completed, identifying the needs of the child, gathering relevant information from legal guardians, family members, other licensed professionals and clinicians, developing an individualized plan of care with the child's team, assisting the child in obtaining needed services, monitoring the delivery of services to the child and making any necessary adjustments in the plan of care based upon any changes to the needs or status of the child. The Case Manager will coordinate with the LME/MCO care coordinator so as to not duplicate, or replace care coordination services that are required to be provided by the LME/MCO staff.

D. No later than January 1, 2017, the Department will provide additional funding for NC START to expand its services for children with complex needs. The Department will request recurring funds for NC START for the 2017-2019 Budget.

E. The Department agrees to provide training in EPSDT to Case Managers, provider organizations and LME/MCO staff involved in the authorization or delivery of services to Children with Complex Needs, including instructions addressing processing requests for services made in accordance with EPSDT.

F. No later than January 1, 2017, the Department shall publish a Communication Bulletin to all LME/MCOs implementing the procedures contained in this Agreement.

G. The Department will seek approval and funding for a position within DMH/DD/SAS to act as an Administrator to oversee the implementation of the terms of this Agreement, respond to any inquiries made by LME/MCO staff, Case Managers or provider organizations, and respond to complaints made by the parents and guardians of children being served in accordance with this Agreement. Until such time as approval, funding and hiring occurs, the Department will continue the role of the State Coordinator.

H. No later than May 1 2017, the Department will offer training to providers dedicated to serving Children with Complex Needs in an effort to promote a provider network qualified to provide residential and other services to these children.

I. No later than April 1, 2017, the Department's Division of State Operated Healthcare Facilities will begin operation of one outpatient clinic dedicated to serving Children with

Complex Needs, staffed by clinicians who have experience in the diagnosis and treatment of individuals with the dual diagnoses of intellectual disability and mental illness. The clinic(s) will conduct and/or review assessments, make recommendations concerning appropriate services and consult with families, providers and LME/MCOs serving these children. See attached exhibit 1 for details, which exhibit is incorporated by reference as if fully set forth herein.

## IV. MONITORING

A. The Department shall maintain documentation that the requirements of this Agreement have been implemented and shall provide to DRNC all documents, forms, instructions and training materials relevant to this Agreement, subject to all state and federal confidentiality laws, rules and regulations.

B. The Department shall provide the following information to DRNC at the conclusion of each calendar quarter:

1. A list of children identified pursuant to Paragraph III.A of this Agreement, and includes
   a. The age of the child.
   b. The gender of the child.
   c. The LME/MCO serving the child.
   d. Whether the child was referred to NC START, or similar services.
   e. Whether the child was admitted to the NC START program, or other services, including inpatient, and if so, the date of admission, and date of discharge from the service.
   f. Whether the child is receiving services through the Innovations waiver program.

2. The report specified in Section IV.B.1 shall be delivered to DRNC no later than thirty days after the conclusion of each calendar quarter through December 31, 2018. (July 31, 2017; October 31, 2017; January 31, 2018; April 30, 2018; July 31, 2018, October 31, 2018, etc.)

## V. CONSTRUCTION AND TERMINATION

A. The Parties agree to jointly file this Agreement with the Court, together with a Complaint and a joint motion to conditionally dismiss the Complaint pursuant to Federal Rule of Civil Procedure 41(a). The Parties further agree that this case will remain on the Court's inactive docket, with the Court retaining jurisdiction to enforce the Agreement in the event of any disputes that may arise between the Parties until the Agreement terminates, subject to the limitations set forth in Sections V(E) and (F) of this Agreement. In the event the Court declines to retain jurisdiction, this Agreement shall become null and void and DRNC has the right to revive any claims otherwise barred by operation of this Agreement.

B. The implementation of this Agreement shall begin immediately upon execution. The Parties anticipate that the Department will have substantially complied with the

5

substantive provisions in Section III of this Agreement by December 31, 2018, unless the Agreement is otherwise terminated, cancelled, or extended. Substantial compliance is achieved if any violations of the Agreement are minor and occasional and are not systemic. The Department may terminate this agreement without cause by giving DRNC 60 days written notice. In the event the Department terminates this agreement, DRNC has the right to revive any claims otherwise barred by operation of this Agreement. Any Agreement deadline may be extended by mutual agreement of both Parties or pursuant to the process described in Section V(C) below in the event that the Department has not achieved substantial compliance with the Agreement on or before December 31, 2018.

C. The Court shall retain jurisdiction of this action for the purposes specified in Section V(A) until December 31, 2018 unless: (1) the Parties jointly ask the Court to terminate the Agreement before December 31, 2018; or (2) DRNC disputes that the Department is in substantial compliance with the Agreement as of December 31, 2018. If so, DRNC shall inform the Court and the Department by November 30, 2018 that it disputes substantial compliance, and the Court may schedule further proceedings as appropriate. In any such proceedings, the burden shall be on DRNC to demonstrate that the Department has not achieved substantial compliance.

D. Throughout the pendency of this Agreement, DRNC and the Department will coordinate and discuss areas of disagreement and attempt to resolve outstanding differences. In the event of any dispute over the language or construction of this Agreement or its requirements, the Parties agree to meet and confer in an effort to achieve a mutually agreeable resolution prior to terminating the Agreement. It is intended that the Parties will pursue a problem-solving approach so that disagreements can be minimized and resolved amicably and the energies of the Parties can be focused on the Department's compliance with the provisions of this Agreement.

E. With the exception of conditions or practices that pose an immediate and serious threat to the life, health, or safety of individuals receiving services under this Agreement, if DRNC believes the Department has failed to fulfill any obligation under this Agreement, DRNC shall, prior to initiating any court proceeding, notify the Department in writing of any alleged non-compliance with the Agreement and request that the Department take action to correct such alleged noncompliance. With the exception of conditions or practices that pose an immediate and serious threat to the life, health, or safety of individuals receiving services under this Agreement, the Department shall have 45 days from the date of such written notice to respond to DRNC in writing by denying that noncompliance has occurred, or by accepting (without necessarily admitting) the allegation of noncompliance and proposing steps that the Department will take, and by when, to cure the noncompliance. DRNC will respond to any Department proposal to cure the alleged non-compliance within 45 days, if the Department fails to respond within 45 days or denies that noncompliance has occurred, DRNC may seek an appropriate judicial remedy.

F. If the Department responds by proposing a curative action by a specified date, DRNC may, within 45 days, accept the Department's proposal or offer a counterproposal for a different curative action or deadline. If the Parties reach an agreement that varies from

6

the provisions of this Agreement, the new agreement shall be in writing, signed and filed with the Court. If the Parties fail to reach agreement on a plan for curative action, DRNC may seek an appropriate judicial remedy, and shall have the burden of proving such alleged noncompliance, other than as described in Section V(C). The Parties will not seek to have the Court enforce implementation of this Agreement other than through the process set forth in Sections V (E) and (F).

**H.** Any modification of this Settlement Agreement must be consented to by the Parties, shall be executed in writing by the Parties, shall be filed with the Court, and shall not be effective until the Court enters the modified agreement and retains jurisdiction to enforce it. The Parties shall promptly notify each other of any judicial or administrative challenge to this Agreement or any portion thereof, and shall defend against any challenge to the Agreement.

**I.** Failure by any Party to enforce this entire Agreement or any provision thereof with respect to any deadline or any other provision herein shall not be construed as a waiver.

**J.** In addition to the monitoring reports specified in Section IV of this Agreement, the Department shall maintain sufficient records to document that the requirements of this Agreement are being properly implemented and shall make such records available to DRNC for inspection and copying upon request, subject to applicable state and federal confidentiality statutes, laws, rules and regulations. DRNC may, in good faith and with reasonable notice to the Department, require additional information and data from the Department with regard to the Department's compliance with the terms of this Agreement. The Department will cooperate and comply with those requests to the extent the information and data is available, and subject to applicable state and federal confidentiality laws, statutes, rules and regulations.

**K.** The Department will work collaboratively with DRNC to provide full access to the people, places, and documents that are necessary to assess the Department's compliance with and/or implementation of this Agreement subject to applicable federal and state law.

**L.** Notice under this Agreement shall be provided by overnight courier or hand delivery to the following or their successors:

> Disability Rights North Carolina
> John R. Rittelmeyer
> 3724 National Drive Suite 100
> Raleigh, NC 27612
>
> Secretary of DHHS
> Lisa G. Corbett, General Counsel
> 101 Blair Drive
> Adams Building
> Raleigh, NC 27699

FOR DISABILITY RIGHTS NC

*signature*
John R. Rittelmeyer
Director of Special Litigation


FOR THE NORTH CAROLINA DEPARTMENT
OF HEALTH AND HUMAN SERVICES

*signature* for MKL
Mandy Cohen
Secretary
North Carolina Department of Health
And Human Services